**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— )
*In re:* Application Pursuant to 28 U.S.C. § 1782 of )     Civil Action No.
SRI TRANG GLOVES (THAILAND) PUBLIC )
COMPANY LIMITED )
  )
Petitioner, )
  )
- to take discovery of - )
  )
THE CLEARING HOUSE PAYMENTS COMPANY )
L.L.C. AND AMERICAN EXPRESS COMPANY, )
  )
Respondents. )
—————————————————————————— )

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE APPLICATION OF SRI TRANG GLOVES (THAILAND)**
**PUBLIC COMPANY LIMITED FOR AN ORDER**
**TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Petitioner Sri Trang Gloves (Thailand) Public Company Limited ("Sri Trang") respectfully submits this Memorandum of Law in support of its Application and Petition (the "Application") for an Order, pursuant to 28 U.S.C. § 1782 ("§1782"), authorizing it to obtain certain limited discovery from Clearing House Payments Company L.L.C. ("CHIPS") and American Express Company ("American Express") for use in its ongoing judicial proceeding (the "Singapore Proceeding") commenced on July 21, 2025 before the Singapore High Court in order to enforce and to confirm a multi-million dollar Singapore-seated arbitration award entered against Pacific Apex Partnership LLC ("Pacific Apex") and, its founder and sole member, Dr. Shann Lin ("Dr. Lin" and, together with Pacific Apex, "Defendants"). The Singapore Proceeding is entitled *Sri Trang Gloves (Thailand) Public Company Limited v. Pacific Apex Partnership LLC and Dr. Shann Lin,* General Division of the High Court of the Republic of Singapore, Case No. HC/OA 765/2025. This Application is supported by the points and authorities set forth

below together with the Declaration of Nicole A. Sullivan dated July 31, 2025 (the "Sullivan Decl.") and its accompanying exhibits as well as the Application with the proposed Order annexed as Exhibit 1 and the subpoenas *duces tecum* (the "Subpoena") to be served on CHIPS and American Express are annexed as Exhibits A and B respectively to the proposed Order.

## PRELIMINARY STATEMENT

Sri Trang is a manufacturer of examination gloves dual-listed in Singapore and Thailand. This Application arises out of an arbitration and related proceedings in Singapore wherein an arbitration tribunal (Mr. Timothy Cooke) found that Pacific Apex and Dr. Lin were liable to Sri Trang under breach of contact and/or other claims in a principal amount that exceeds USD $4.7 million plus interest and costs (totaling over USD 9 million to date). Among other things, the tribunal further found that Pacific Apex and Dr. Lin had fabricated a sham defense to the arbitration and had given false evidence, under oath, during the arbitration. Sri Trang has commenced the Singapore Proceeding to confirm the award and to obtain a worldwide freezing order against Pacific Apex and Dr. Lin so that it may enforce the award, which order was issued. By this Application, Sri Trang seeks to obtain certain financial documents arising out of the international transfer of funds (specifically U.S. dollar-denominated transactions) by Dr. Lin and Pacific Apex who have numerous contacts abroad and frequently transferred funds internationally through CHIPS and their purchases and payments of credit cards from American Express. Such information will assist Sri Trang in identifying assets, entities and persons that may be subject to the injunction entered by the Singapore High Court and will be critical to verifying information that Dr. Lin will be required to provide during the Singapore Proceeding. Given the tribunal's finding that Dr. Lin has already lied under oath, obtaining the requested documents from CHIPS and American Express is critically important to the Singapore

Proceeding. As set forth below, all pertinent requirements of §1782 have been met. Thus, the Application should be granted.

<u>**FACTUAL BACKGROUND**</u>

    **A.**    **The Underlying Facts and the Singapore Proceeding.**

Pacific Apex is a trading company that maintains its principal place of business at 201 E. Laurel Blvd., Pottsville, PA. *See* Sullivan Decl., at ¶ 2, Ex. A, p. 3 at ¶ 3. Dr. Lin is the founder and principal of Pacific Apex. *See* Sullivan Decl., at ¶ 3.

On about March 23, 2023, Sri Trang commenced arbitrations under the auspices of the Singapore International Arbitration Centre Court of Arbitration (the "SIAC") against Pacific Apex and later joined Dr. Lin to those proceedings entitled *Sri Trang Gloves (Thailand) Public Company Limited v. Pacific Apex Partnership LLC and Dr. Shann Lin,* SIAC Arbitration ARB097/23/ALS and ARB098/23/ALS (collectively, the "Arbitration"). *See* Sullivan Decl., ¶ 4., Ex. A. p. 1.

In the Arbitration, Sri Trang alleged that Pacific Apex had breached certain sales contracts with Sri Trang by failing to fully pay for 2 million boxes of nitrile examination gloves shipped to the designated destination in California in 2021-2022. Sri Trang also sought to hold Dr. Lin personally liable for the unpaid amounts under various claims. *See* Sullivan Decl., ¶¶ 5, Ex. A.

By a final award dated May 30, 2025 (the "Initial Award"), the Arbitral Tribunal (Mr. Timothy Cooke) found that Pacific Apex and Dr. Lin were jointly and severally liable to Sri Trang in the principal amount of USD 4,762,540.24 plus interest and that Pacific Apex was obligated to pay Sri Trang legal fees and arbitration costs totaling SGD 1,478,460.79. *See* Sullivan Decl., Ex. A. The Initial Award was thereafter amended (the "Amended Award" and

together with the Initial Award, the "Final Award") to hold Pacific Apex *and* Dr. Lin severally and jointly liable for the legal fees and arbitration costs. *See* Sullivan Decl, Ex. B.

The Arbitral Tribunal further found that Pacific Apex and Dr. Lin had fabricated a contractual document to establish a sham defense to Sri Trang's claims and that Dr. Lin had presented "deliberately misleading and untruthful testimony in support of that defense" during the Arbitration. *See* Sullivan Decl., Ex. A, ¶¶ 95, 101-106.

On July 21, 2025, Sri Trang commenced the Singapore Proceeding by filing an Originating Application (Without Notice) to confirm the Final Award with the Singapore High Court. *See* Sullivan Decl., Ex. C. Contemporaneously therewith, Sri Trang filed a Summons (Without Notice) seeking a worldwide injunction restraining Dr. Lin and Pacific Apex from dissipating assets that could be used to satisfy the Final Award. *See* Sullivan Decl, Ex. D.  Dr. Lin's willingness to lie and fabricate evidence during the Arbitration creates a reasonable basis to believe that absent such restraints, Dr. Lin and Pacific Apex will take steps to conceal assets and prevent Sri Trang from collecting upon the Final Award. On July 22, 2025, the Singapore High Court granted Sri Trang's application to confirm the Final Award, and the worldwide freezing injunction against Dr. Lin and Pacific Apex in the terms of the Order issued by the Singapore High Court. *See* Sullivan Decl. at Ex. E.

**B.    The Respondent Parties**

CHIPS operates the Clearing House Interbank Payments System. *See* Sullivan Decl. at Ex. F. CHIPS "is the largest private sector USD clearing system in the world, clearing and settling $1.8 trillion in domestic and international payments per day." *See* Sullivan Decl. at Ex. G. CHIPS provides both transmission of instruction messages and settlement of funds between institutions to process international U.S. dollar fund transfers among internal banks. CHIPS "is

the United States' main electronic funds-transfer system for processing international U.S. dollar funds transfers made among international banks." *See* Sullivan Decl. at Ex. H. CHIPS estimates that it handles more than 90% of all U.S. dollar-based funds transfers moving between countries around the world. *Id.* CHIPS is owned by the Clearing House which is headquartered and regularly does business in this district. *See e.g. Ecoprivate Bus. Ltd. v. The Clearing House Payments Co., L.L.C.*, No. 23 Misc. 232 (KPF), 2023 WL 4848516, at *1 (S.D.N.Y. Jul. 28, 2023); Sullivan Decl. at Ex. I.

American Express provides credit cards including an American Express credit card issued to Shann Lin and Pacific Apex as well as related entities. American Express is headquartered and regularly does business in this district, including 200 Vesey Street, New York, New York 10285. *See* Sullivan Decl. at Ex. J.

## C.    The Requested Discovery

Petitioner seeks discovery from CHIPS and American Express in support of the Singapore Proceeding. As noted above, CHIPS is a wire-transfer clearing house based in Manhattan that is commonly known to act as a clearing firm for U.S. dollar-denominated wire transfers between international banks. Accordingly, and as described in the proposed Subpoena attached as Exhibit A to the proposed Order, Petitioner seeks limited documents and information from CHIPS concerning any assets, accounts, or transfers to or from the Defendants in the Singapore Proceeding or entities related to them. This information is expected to assist in locating the Defendants' assets and verifying the accuracy of information that Defendants are required to provide in the ongoing Singapore Proceeding.

American Express issued credit cards to Defendants in the Singapore Proceeding. The purchase and payment history on these and American Express credit cards issued to related

entities are expected to assist in locating the Defendants' assets. Accordingly, and as described in the proposed Subpoena attached as Exhibit B to the proposed Order, Petitioner seeks limited documents and information from American Express concerning any purchases and payments made by Defendants using American Express cards.

Documents responsive to the two Subpoenas are highly relevant to the ongoing Singapore Proceeding for several reasons, including locating the assets of Pacific Apex and Dr. Lin, identifying the persons and entities that may be subject to or should be notified of the freezing order entered by the Singapore High Court, verifying the accuracy of statements that Dr. Lin will be required to make in the Singapore Proceeding, and potential enforcement actions in the other foreign jurisdictions where their assets may be located. *See* Sullivan Decl. at ¶ 10. In addition, the Subpoenaed information will prevent further movement or dissipation of the Defendants' assets and identify to whom they may have transferred funds in an effort to avoid satisfying the Final Award.

## ARGUMENT

## I

### SRI TRANG'S APPLICATION SATISFIES THE REQUIREMENTS OF § 1782 AND SHOULD BE GRANTED

"A request for discovery under § 1782 presents two inquires: First, whether the District Court is authorized to grant the request; and second so whether the District Court should exercise its discretion to do so." *In Re: Grupo Qumma, S.A.*, Case No. M 8-85, 2005 WL 937486 at *1 (S.D.N.Y. April 22, 2005). Sri Trang's application satisfies both the statutory requirements set forth in § 1782 and the discretionary factors identified by *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249, 255-256, 258 (2004). Both the Supreme Court and the Second Circuit have acknowledged that Congress intended to provide a

liberal avenue to discovery in aid of foreign proceedings. *See Intel,* 542 U.S. at 247-48; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability") (citation and quotations omitted); *In re Edelman,* 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

Sri Trang's application satisfies both the statutory requirements set forth in § 1782 and the discretionary factors identified by Courts construing that statute. Accordingly, the Application should be granted.

### A.    Sri Trang's Application Meets all of § 1782's Requirements.

Section 1782 authorizes Federal District Courts to assist foreign litigants in gathering information for use in foreign proceedings. The statute provides, in pertinent part that:

> The District Court of the District in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The Order may be made . . . upon the application of any interested person. . . .

28 U.S.C. § 1782. Once again, Sri Trang's application meets each of these requirements:

### i.    Sri Trang is an "Interested Party" under § 1782.

Litigants in the foreign proceeding for which discovery is sought are, by definition, "interested parties" under § 1782. *Intel*, 542 U.S. at 256 (foreign litigants "may be the most common example of the interested persons who may invoke § 1782").

Sri Trang was the Claimant in the Arbitration brought in Singapore and is the Applicant in the proceeding before the Singapore High Court to confirm the Final Award and obtain a worldwide freezing order. *See* Sullivan Decl., ¶ 8, Exs. C. Accordingly, Sri Trang is an "interested party" within the meaning of § 1782.

ii.     **The Discovery Sought by Sri Trang is For Use in a Foreign Proceeding**

The documents sought by Sri Trang from CHIPS and American Express are "for use in" in the Singapore Proceeding. The statutes' "for use in" provision has been held to "mirror the requirements in Federal Rule Civil Procedure 26(b)(1) and mean discovery that is relevant to the claim or the defense of any party, or for good cause, or any matter relevant to the subject matter involved in the foreign action." *Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006). Moreover, an applicant need not show that the discovery would be admissible or even discoverable in the foreign Court. *See Intel*, 542 U.S. at 260 ("nothing in the text of § 1782 limits the District Court's production order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"). Rather, "[i]n considering each factor, the district court must remain mindful of the twin aims of Section 1782: (1) providing efficient assistance to participants in international litigation, and (2) encouraging foreign countries—by example—to provide similar assistance to our courts." *In re Fourworld Capital Mgmt. LLC,* Civil Action No. 23-1460-GBW, 2024 U.S. Dist. LEXIS 69617 (D. Del. Apr. 16, 2024); *see also In Re Metallgesellschaft ag*, 121 F.3d 77, 79 (2d Cir. 1997).

In this regard, *Ecoprivate* is instructive. *Ecoprivate Bus, Ltd. v. Clearing House Payments Co., LLC*, Case No. 22 Misc. 232 (KPF), 2023 WL 484516 at *7 (S.D.N.Y. July 28, 2023). In *Ecoprivate*, the applicant had obtained an arbitration award against certain entities in Thailand and was contemplating filing a criminal proceeding in Switzerland and an action to enforce the award in the United Kingdom. *Ecoprivate*, 2023 WL 484516 at *1. The applicant commenced a § 1782 proceeding in order to obtain information from numerous banks located in New York relating to financial transactions involving the respondent in the arbitration

proceedings *Id.* In granting the application, the District Court found that the documents were "directly related to Applicants' claims in contemplated foreign actions." *Id.* at *8.

Here, Sri Trang similarly seeks documents that are "directly related" to the Singapore Proceeding. More specifically, Sri Trang seeks the production of (1) any assets, accounts, or transfers to or from the Defendants or entities related to them from CHIPS and (2) credit card purchases and payment history from American Express. All of the discovery sought will assist Sri Trang in locating the assets of Pacific Apex and Dr. Lin, identifying the persons and entities that may be subject to or should be notified of the freezing order entered by the Singapore High Court, verifying the accuracy of statements that Dr. Lin will be required to make in the Singapore Proceeding, and potential enforcement actions in the other foreign jurisdictions where their assets may be located. Given that Dr. Lin has already been found to have lied, under oath, during the Arbitration, obtaining request documents from CHIPS and American Express has an even heightened importance here. As in *Ecoprivate*, these documents are directly related to the Singapore Proceeding and, thus, satisfy the "for use in" requirement of § 1782.

### iii.    CHIPS and American Express Are Found Within the District.

Courts in this Circuit apply a "flexible reading" of the words "reside" and "found" in Section 1782 and interpret the terms broadly. *In re Edelman*, 295 F.3d at 180. Generally speaking, the scope of this language "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F. 3d 520, 527 (2d. Cir. 2019) (cleaned up). The "reside or is found" requirement of § 1782 is satisfied if an entity transacts business within the district and the "discovery material sought proximately resulted from the respondent's forum contacts." *In re Del Valle Ruiz*, 939 F.3d at 530. It does not matter that an applicant cannot point to a specific transaction occurring within the district because the discovery of specific transactions is often the very reason that an applicant subpoenas an entity. *See e.g. In re Inv.*

*Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (finding § 1782 requirements were met where intermediary bank "does business in the Southern District of New York" and applicants sought subpoenas "to reveal the existence and nature of suspected transactions" wherein bank acted as intermediary). All that is required is a showing that the entity transacts business within the district and the discovery sought resulted from such business activities. *See e.g. In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021) (finding the § 1782 requirements were met where intermediary bank "does business (including correspondent and intermediary banking) in the Southern District of New York" but applicants did not provide evidence of specific transactions through the intermediary banks).

CHIPS and American Express both maintain their headquarters and principal place of business in the United States in this District. Applications for 1782 discovery from CHIPS are thus routinely granted in this District. *See e.g.*, *Ecoprivate Bus. Ltd.* 2023 WL 4848516, at *2; *In re Vinmar Overseas*, *Ltd*., No. 20 Misc. 277 (RA), 2020 WL 4676652, at *2 (S.D.N.Y. Aug. 12, 2020); *In re Byrne*, No. 23 Misc. 048 (VEC), 2023 WL 3203811, at *6 (S.D.N.Y. May 2, 2023). The same is true for American Express. *See e.g., In re Amon*, 347 F.R.D. 17 (S.D.N.Y. 2024); *In re Padronizado*, No. 22 Misc. 154, 2022 U.S. Dist. LEXIS 108627 (S.D.N.Y. June 17, 2022).

Thus, the "reside or is found" requirement of § 1782 is also satisfied with respect to CHIPS and American Express.

### B.    The Discretionary Factors Favor Granting the Application.

Once the statutory requirements are met, courts consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether discovery is sought from a participant in the foreign proceeding who is accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

tribunal to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Brandi-Dohrn*, 673 F.3d at 80-81 (*citing Intel*, 542 U.S. at 264-65). All of these discretionary factors weigh in favor of the Application.

### i.    CHIPS and American Express Are Not Participants in the Singapore Proceeding.

Neither CHIPS nor American Express is a party or participant in the Singapore Proceeding. *See* Sullivan Decl., ¶ 8, Ex. C. The need for § 1782 discovery is more apparent when the person from whom discovery is sought is not a participant in the relevant foreign proceeding. *See Intel*, 542 U.S. at 264 "A primary purpose of § 1782(a) is 'to assist foreign tribunals in obtaining relevant information that tribunals may find useful but . . . they cannot obtain under their own laws.'" *In Re: Microsoft*, 2006 WL 1344091 at 3 (quoting *Intel*, 542 U.S. at 262). It is thus appropriate for this Court to exercise discretion in favor of the Application given that CHIPS and American Express are not parties or participants in the Singapore Proceeding and is beyond the scope of the subpoena power of the Singapore High Court.

### ii.    There is No Indication that the Singapore High Court would Object to the Discovery.

There is no indication that the Singapore High Court would object to the requested discovery. Singapore is a participant in the convention on gather evidence abroad. *See* Hague Conference on Private International Law, Status Table Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters available at *https://www.hcch.net/en/instruments/conventions/status-table/?cid=82*; *see also CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, Case No. 12-CV-08087 at * 29 (CM) (SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013) (noting that "Singapore has expressed commitment to the

-11-

Hague Convention [on Taking Evidence Abroad] by incorporating it into local laws."). Under the circumstances, there is no reason to believe that Singapore would have any objection to gathering relevant information through the means sought in this Application.

In a similar vein, there is no evidence that Sri Trang is attempting to circumvent any restrictions on evidence gathering in Singapore. On the contrary, Sri Trang is seeking information in the first instance to assist the Singapore High Court in locating and preventing the dissipation of assets necessary to satisfy the Final Award. Thus, this factor provides no impediment to the Court in granting this Application.

### iii.    The Discovery Sought by Petitioner Would Not Circumvent the Singaporean Judicial Process

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In the Second Circuit, there is no requirement that a petitioner seeking discovery under Section 1782 first attempt to obtain the requested information via the foreign tribunal. *Mees*, 793 F.3d at 303 (Section 1782 "contains no foreign-discoverability requirement.").

Here, the Application does not attempt to circumvent any proof-gathering restriction or public policy in the Singaporean Proceeding. Rather, Petitioner invokes § 1782 to obtain highly relevant evidence: information concerning financial transactions involving Pacific Apex and Dr. Lin that occurred outside of Singapore, but which have a connection to the Southern District of New York. These financial transactions were conducted through CHIPS and American Express, and thus, discovery from it is entirely appropriate. Petitioner's motivation for seeking § 1782 discovery is thus aligned with Congress' goal in enacting § 1782: "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons

having no bearing on international comity, they cannot obtain under their own laws[.]" *Intel*, 542 U.S. at 262.

####    iv.    The Discovery Sri Trang Seeks is Narrowly Tailored.

Finally, the fourth *Intel* factor – whether the discovery requests are "unduly intrusive or burdensome" – likewise supports granting the Application. *See Intel*, 542 U.S. at 265. "This factor directs the Court to look at the requests in the aggregate to decide whether they are unduly intrusive or burdensome." *Fleischmann*, 466 F. Supp. 2d at 1032. The court need only determine whether discovery is "sufficiently tailored to the litigation issues for which production is sought." *In Re: Gemeinshcaftspraxis Dr. Med. Schottdorf,* Case No. M19-88 (BSJ), 2006 WL 3844464 at 8 (S.D.N.Y. Jan. 4, 2007). Here, the discovery is narrowly tailored. It seeks only (1) U.S. dollar denominated transactions related to the Defendants maintained by CHIPS in the ordinary course and (2) limited credit card transactions that are maintained by American Express in the ordinary course. Given the significance of these documents to the enforcement of the arbitration award and the injunction issued by the Singapore High Court and the possibility of the freezing of substantial, New York-based assets. As such, Petitioner satisfies the fourth *Intel* prong.

####    C.    The Court Should Grant Petitioner's Application *Ex Parte*

The Court should grant the Application *ex parte* because doing so would cause no prejudice to CHIPS or American Express as a matter of law. "Because the respondents will have the opportunity to challenge [the] subpoena[] once served (including but not limited to a challenge as to whether section 1782 assistance should be afforded at all)" courts frequently grant § 1782 requests *ex parte*. *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021). Here, CHIPS and American Express would not be prejudiced should the Court grant the

Application *ex parte* because CHIPS and American Express would have the opportunity to challenge the Subpoena after service.

## **CONCLUSION**

For the reasons stated above, Sri Trang respectfully requests that the Court (a) grant the Application and Petition for an Order to Conduct Discovery pursuant to 28 U.S.C. § 1782; (b) enter the proposed Order; (c) order that Petition may proceed *ex parte*, (d) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas attached to the proposed Order as Exhibits A and B; (e) directing CHIPS and American Express to comply with such subpoenas in accordance with the Federal Rules of Civil Procedure and the Rules of this Court and produce documents within 30 days following service of the subpoenas and (f) grant such other and further relief as this Court may deem just and proper.

WHITE AND WILLIAMS LLP

By:_____
/s/ Nicole A. Sullivan

Nicole A. Sullivan
Stuart Wells
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019
(212) 631-4420

Dated: New York, New York
       July 31, 2025